UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID A. ABRAMS, No. 241224, a/k/a ABRAHAMS,<br><br>        Plaintiff,<br>v.<br><br>CORRECTIONS OFFICER WATERS AND CAPT. NUNEZ, sued in their individual capacities; CORRECTIONS OFFICER PHILLIPS; DISCIPLINARY REPORT INVESTIGATOR KELLY; CAPT. JOHN WATSON; WARDEN SCOTT ERFE; MAINTENANCE SUPERVISOR JOHN DOE; and MAILROOM HANDLER CORRECTIONS OFFICER RAMIREZ, sued in their individual and official capacity,<br><br>        Defendants. | Civil Action No.<br>3: 17 - CV - 1659 (CSH)<br><br><br><br>MARCH 26, 2018 |

**RULING ON MOTION FOR PRELIMINARY INJUNCTION**

**Haight, Senior District Judge:**

**I. BACKGROUND**

Pending before the Court is a preliminary injunction motion by Plaintiff [Doc. 6], which the Court will analyze and resolve in this Ruling. The condensed procedural and factual history of the case is as follows.

On October 10, 2017, *pro se* plaintiff David A. Abrams, an inmate currently incarcerated at the Corrigan-Radgowski Correctional Institution ("Corrigan") in Uncasville, Connecticut, brought a civil rights action under 42 U.S.C. § 1983 against various prison officials at Cheshire Correctional

1

Institution ("Cheshire C.I."), where he was previously housed. Doc. 1 ("Complaint"). On February 2, 2018, upon performing its initial screening duties pursuant to 28 U.S.C. § 1915A, this Court dismissed Abrams's claims against all but three defendants: Corrections Officer Phillips, Corrections Captain Nunez, and Corrections Captain John Watson. Doc. 17 ("Initial Review Order"). The remaining three Eighth Amendment "cruel and unusual punishment" claims in this action include: (1) "excessive force" against Phillips regarding his conduct in subduing Abrams after his cellmate, Kashawn Brown, attacked him on August 4, 2017; (2) "failure to protect" against Nunez for placing Brown, "a high security" risk inmate, in Abrams's cell, despite Brown's history of attacking cellmates; and (3) exposure to "hazardous conditions of confinement" against Watson for placing Abrams in a segregation cell with black mold on the vent and not remediating said mold upon receiving notice of the problem. *Id.,* at 12-19.

In addition, the Court decided to permit Abrams's state law claims of assault, battery, and intentional infliction of emotional distress to proceed against Phillips in conjunction with his Eighth Amendment "excessive force" claim. *Id.,* at 35. The Court has supplemental jurisdiction over these state law claims, which derive from a common nucleus of operative fact with the federal claim against Phillips. As of this date, defendants Phillips, Nunez, and Watson have not yet responded to the Complaint.

On October 27, 2017, shortly after filing his Complaint, Abrams moved for a preliminary injunction against the Defendants, requesting the Court to grant him an injunction "directing the defendant [Waters, and the named prison officials at Corrigan] to assign [him] single-cell status as a result of [Waters's] failure to protect the plaintiff after the plaintiff was assaulted on two different occasions by his cellmates." Doc. 6-1 ("Memorandum in Support of Plaintiff's Motion for

Preliminary Injunction"), at 1. In so moving, Plaintiff asserts that he has twice been assaulted by cellmates at other facilities, and consequently, suffers from sleeplessness, "receiv[ing] less than 3 hours [of] sleep nightly because [he is] always on guard anticipating another attack." Doc. 6 ("Motion for Preliminary Injunction"), ¶ 17. He also claims that he has been evaluated by "a mental health doctor who stated that it['s] normal for [him] to be on alert and paranoid due to the trauma [he] suffered." *Id.*, ¶ 18. As a result, the doctor allegedly recommended that [he] obtain single cell status." *Id.*, ¶ 19.

Defendants filed a memorandum in opposition to Abrams's preliminary injunction motion. Doc. 13. In that opposition, Defendants argue that (1) Abrams's transfer from Cheshire C.I. to Corrigan moots any claim for injunctive relief, (2) Abrams has failed to show that he will suffer irreparable harm in the absence of the requested relief, and (3) Abrams has not demonstrated a likelihood of success on the merits of his claims. *Id.,* at 3-8. In support of their memorandum, Defendants attached an affidavit of Dr. Craig Burns, a psychiatrist who provides mental health services for Connecticut prison inmates.[1] Doc. 13-1 ("Burns Affidavit," dated December 4, 2017).

On November 22, 2017, Burns reviewed Abrams's Department of Correction ("DOC") medical files "to evaluate his mental health, to determine the treatment most suitable to address any mental health needs and to assess whether there was any mental health related reason to support his request for a single cell." *Id.*, ¶ 8. In reviewing Abrams's prior psychiatric records, Burns noted that during his seventeen years of confinement, Abrams "has been a well-adjusted inmate." *Id.*, ¶ 9. Moreover, when assessed by a prior clinician on October 23, 2017, that doctor found no indication

---

[1] Burns asserted that he is "Board Certified in General Psychiatry and Forensic Psychiatry" and described his title as "Chief of Psychiatric Services for the Connecticut Department of Correction." Doc. 13-1, ¶¶ 3- 4.

that Abrams "was in any way psychiatrically impaired" or that he "needed the accommodation of a single cell."[2] *Id.*, ¶ 10. In addition, upon speaking with the Corrigan custody staff, Burns found that Abrams had no "issues that would indicate a possible need for a single cell." *Id.*, ¶ 11.

After repeated attempts to interview Abrams – with Abrams at first declining to be interviewed – Burns set up an interview date of December 5, 2017. *Id.,* ¶¶ 12-14. In anticipation of the interview, Burns reviewed his research on Abrams's history at Corrigan. He noted that Abrams appears to be a "relatively well-adjusted inmate at Corrigan," classified as "Mental Health 2," an inmate with "a history of mental health disorder that is not currently active or needing treatment," or one who "has a current mild mental health disorder, not requiring treatment by a mental health professional." *Id.*, ¶ 16. Moreover, for the majority of his incarceration, Abrams was a "Mental Health 1" inmate, one who was "emotionally stable," with "no mental health history or current need" for treatment. *Id.*, ¶ 17.[3] As of December 4, 2017, Burns found there was no "sufficient evidence to suggest in any way that there [was] a mental health or any other related reason to recommend that [Plaintiff] requires the accommodation of a single cell." *Id.*, ¶ 18. Burns expressed his intention to update his findings following his scheduled interview with Abrams. *Id.*, ¶ 19.

In response to Defendants' opposition, Abrams filed a reply, disagreeing with Burns's conclusions regarding his mental health and arguing that he is in "actual danger" of future harm from another inmate. Doc. 15, at 3-6. Abrams reiterated that he has twice been assaulted by other

---

[2] Plaintiff named the clinician who evaluated him as "Matt." Doc. 15, at 2. Dr. Burns also suggests that the clinician who "met with Mr. Abrams when he first arrived at Corrigan" was Mathew Eggen. Doc. 16, ¶ 28.

[3] *See also* Doc. 16 ("Supplemental Burns Affidavit," dated December 13, 2017), ¶ 20.

4

inmates and, therefore, does not trust the staff at Corrigan to protect him from future harm. *Id.,* at 4-5.

Defendants replied, updating their submission in opposition to the motion by filing the "Supplemental Affidavit of Dr. Craig Burns" [Doc. 16], describing Burns's findings after interviewing Abrams on December 5, 2017. In that affidavit, Burns stated that after "a nearly two and a half hour evaluation and a review of my previous evaluation of Mr. Abram's issues[,] to a reasonable degree of medical certainty, it is my opinion that there is *not* a psychiatric reason to provide Mr. Abrams with 'single cell' status at this time." *Id.*, ¶ 11 (emphasis in original). He perceived Abrams as "well-nourished," "well groomed," and "articulate." *Id.*, ¶ 12. Abrams "neither reported nor appeared to be experiencing any physical or obvious emotional distress." *Id.* Overall, Abrams appeared "to be a high functioning, intelligent, educated, articulate, [and] motivated individual," who did not meet the criteria for any emotional or stress-related disorder. *Id.* Furthermore, he demonstrated "intellectual adroitness" that would not be expected in one with cognitive impairment. *Id.*, ¶ 14.

Although Abrams self-reported "mood related" symptoms, such as sleeplessness and decreased frustration tolerance, he "did not meet criteria for a Mood Disorder," such as depression. *Id.*, ¶ 13. For example, rather than exhibiting signs of hopelessness, Abrams was noted to be working diligently to "us[e] the courts to seek a reduction in his sentence that might result in a discharge from DOC far in advance of his current sentence." *Id.*

In addition, although Abrams self-reported traumatic experiences in his life, he "ha[d] not

5

met criteria for the trauma and stress related diagnosis of Post-Traumatic Stress Disorder."[4] *Id.*, ¶ 15. Rather, he "remains highly functional" with the capability of engaging in "appropriate[ ] levels of self-reflection" and "reality testing." *Id.*, ¶ 16.

Burns reiterated that Abrams was a Mental Health 1 prisoner for 17 years before becoming a Mental Health 2 in October of 2017, *id.*, ¶ 20, following his transfer from Cheshire to Corrigan (which occurred in August 2017). "Neither of these classifications [1 or 2] require the individual, so designated, to have contact with a mental health professional." *Id.*, ¶ 21. Nonetheless, having observed that Abrams is experiencing some level of distress due to the "tragic death of his son and the two assaults that he experienced in DOC," Burns recommended that the optimal approach to managing Abrams's current issues would be to raise his Mental Health score to a Mental Health 3 . . . and to place him on the case load of one of the therapists at Corrigan." *Id.*, ¶¶ 22, 25. Such treatment would be far superior to "placing him in a single cell," which "might provide temporary relief from having to worry about a cell mate assaulting him," but "would not resolve his underlying issues." *Id.*, ¶ 25.

In sum, Burns concluded:

> Remaining at Corrigan with his cellmate, with regular contact with a therapist, dealing with his issues instead of by-passing them, in my opinion would provide an affirmative way to impact the very self-efficacy and adaptive functioning that would

---

[4] The Court notes that Abrams's traumatic experiences detailed in Burns's report had no relation to conditions of his current confinement at Corrigan. Those experiences included, *inter alia*, being "shot at approximately three times," "'jumped' in the community a few times [assaulted by several people at once], . . . assaulted by two inmates within DOC [as stated in his initial complaint, at MacDougall-Walker and Cheshire, C.I.], and learning of the tragic death of his oldest son when he was struck by a car in Bridgeport on April 18, 2016." Doc. 16, ¶ 15. As to the last event, Burns stated that Abrams was experiencing "[g]rief and bereavement," which are "part of the normal process that almost everyone goes through in response to a loss, especially as that relates to the death of a loved one." *Id.*, ¶ 18.

6

be most helpful to Mr. Abrams. The door remains open for the potential reassessment for a single cell, if, after a period of therapy, it was thought to be clinically indicated. However, at the present time, to a reasonable degree of medical certainty, with all of the supports available to Mr. Abrams at Corrigan, it is my opinion that there is *not* a psychiatric reason to provide Mr. Abrams with "single cell" status at this time.

*Id.*, ¶ 29 (emphasis in original).

## II. DISCUSSION

### A. Standard for Preliminary Injunction

Preliminary injunctive relief is "one of the most drastic tools in the arsenal of judicial remedies." *Hanson Trust PLC v. SCM Corp.*, 774 F.2d 47, 60 (2d Cir. 1985). As the United States Supreme Court has stated, "a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*) (quoting 11A Charles A. Wright et al., *Federal Practice and Procedure* § 2948, at 130 (2d ed. 1995)) (emphasis omitted). "The purpose of a preliminary injunction is to preserve the status quo until a trial on the merits." *Lopez v. McEwan*, No. 3:08-CV-678 (JCH), 2010 WL 326206, at *8 (D. Conn. Jan. 22, 2010) (citing *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 114 (2d Cir. 2006)).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[5] "*Winter v.*

---

[5] The Second Circuit employs "[t]he same standards used to review a request for a preliminary injunction" to consider "an application for a temporary restraining order." *Stagliano v. Herkimer Cent. Sch. Dist.*, 151 F. Supp. 3d 264 (N.D.N.Y. 2015). *See also Local 1814 Int'l Longshoreman's Ass'n v. New York Shipping Assoc., Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992) ("the traditional standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction ).

*NRDC*, 555 U.S. 7, 20 (2008). In conformance with Supreme Court authority in *Winter*, the Second Circuit has stated the standard as follows: "A party seeking a preliminary injunction must ordinarily establish (1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of [his] claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest."[6] *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citing *Oneida Nation of New York v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011)), *cert. dismissed sub nom., Allergan PLC v. New York ex. rel. Schneiderman*, __ U.S.__ 136 S. Ct. 581 (2015). *See also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 825 (2d Cir. 2015); *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011).

In general, to establish a "likelihood of success on the merits," the movant for injunctive relief "need only make a showing that the probability of his prevailing is better than fifty percent." *Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988). *See also Nken v. Holder*, 556 U.S. 418, 434 (2009) ("It is not enough that the chance of success on the merits be 'better than negligible.'") (quoting *Sofinet v. INS*, 188 F.3d 703, 707 (7th Cir. 1999)). However, when an injunction is "mandatory," such that it "alter[s] the status quo by commanding some positive act," the movant must demonstrate a "clear" or "substantial" showing of likelihood of success, *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995), and "make a strong showing of irreparable harm," *State of New York*

---

[6] The "serious questions" standard "permits a district court to grant a preliminary injunction in situations where it cannot determine with certainty that the moving party is more likely than not to prevail on the merits of the underlying claims, but where the costs outweigh the benefits of not granting the injunction." *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

*ex rel. Schneiderman*, 787 F.3d at 650 (internal quotation marks and citations omitted).[7] With respect to the second prong, the likelihood of irreparable harm, "[a] moving party must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *NAACP v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995). *See also Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) ("A mandatory preliminary injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.") (citation and internal quotation marks omitted).

In particular, "[i]n the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *White v. Williams*, No. 12 CIV. 1775 (NAM/RFT), 2014 WL 1672634, at *1 (N.D.N.Y. Apr. 28, 2014) (quoting *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997)), *aff'd White v. Clark*, 588 F. App'x 87 (2d Cir. 2015). Moreover, in an "application for an injunction forcing the defendants to change certain prison conditions, 'appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief,' particularly when it comes to regulating a state's administration of its own facilities, including its schools and prisons." *Davidson v. Scully*, 914 F. Supp. 1011, 1014 (S.D.N.Y. 1996) (quoting *Dean v. Coughlin*, 804 F.2d 207, 213 (2d Cir.1986)).

Injunctive relief is "a matter of equitable discretion" so that "it does not follow from success

---

[7] The Second Circuit has clarified that this heightened standard for a mandatory injunction "is especially appropriate when a preliminary injunction is sought against government." *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir.2006) (citations omitted).

9

on the merits as a matter of course." *Winter*, 555 U.S. at 32. "The district court has wide discretion in determining whether to grant a preliminary injunction," and a court of appeals will review that decision "only for abuse of discretion." *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (per curiam) (quoting *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 511 (2d Cir. 2005)). "In deciding a motion for preliminary injunction, a court may consider the entire record including affidavits and other hearsay evidence." *Johnson v. Newport Lorillard*, No. 01 CIV. 9587 (SAS), 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003).

"Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases." *Jarecke v. Hensley*, 552 F. Supp. 2d 261, 264 (D. Conn. 2008) (citing *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 984 (2d Cir.1997)). In cases "[w]here, as here, 'the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony.'" *Jarecke*, 552 F. Supp. 2d at 264 (quoting 7 James W. Moore, et al., *Moore's Federal Practice* , ¶ 65.04[3] (2d ed.1995)). *See also Anderson v. Williams*, No. 3:15-CV-1364 (VAB), 2016 WL 7217588, at *1 (D. Conn. Dec. 13, 2016) ("A district court is not required to conduct an evidentiary hearing on a motion for a preliminary injunction when 'essential facts are not in dispute.'") (quoting *Maryland Cas. Co.*, 107 F.3d at 984 ).

Upon review of the submissions on the present motion, the Court determines that oral testimony and argument will not be necessary to resolve it.

**B.  <u>No Constitutional Right to Single Cell</u>**

In general, a prisoner has "no constitutionally protected right to be confined in any particular

correctional facility or housing unit." *Jarecke v. Hensley*, 552 F. Supp. 2d 261, 265 (D. Conn. 2008) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 248 (1983)) and denying prisoner's request not to be transferred to any correctional facility with dormitory housing, where request was based on prisoner's claim that he found "a dormitory setting stressful"). Pursuant to Connecticut law, prison officials are authorized to exercise their discretion to determine where an inmate will be incarcerated. Conn. Gen. Stat. § 18-86 ("The commissioner may transfer any inmate of any of the institutions or facilities of the department to any other such institution or facility . . . when it appears to the commissioner that the best interests of the inmate or the other inmates will be served by such action."); *see also Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir. 1979) (holding inmate had no justifiable right or expectation based on Connecticut law that he would not be transferred to another prison).

Furthermore, the request to "be assigned a single cell because [a prisoner] believes the solace of a single cell would relieve his anxiety" has been found insufficient, standing alone, to warrant such a transfer. *Jarecke,* 552 F. Supp. 2d at 265. That is because the Eighth Amendment guarantees only "the basic human needs – e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). "To prevail on an Eighth Amendment claim, [an inmate] must show that his confinement violates contemporary standards of decency." *Jarecke*, 552 F. Supp. 2d at 266 (citing *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002)). "Restrictive or harsh conditions" are insufficient to "satisfy this requirement." *Id*. (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Moreover, "[s]haring a cell with another inmate is not unconstitutional." *Id.* (citing *Rhodes*, 452 U.S. at 347-48 (double-celling inmates in an overcrowded facility was not unconstitutional)). In summary, unless an inmate can substantiate

a "medical or mental health diagnosis that would require confinement in a single cell," he has failed to demonstrate a likelihood of success on the merits. *Id.*

## C. Plaintiff's Motion for Preliminary Injunction

### 1. Mootness and Lack of Personal Jurisdiction

As a preliminary matter, the Court notes that mootness and/or lack of personal jurisdiction may deprive the Court of jurisdiction over Plaintiff's claims for injunctive relief. Specifically, the injunction sought is against "Waters, et al.," prison officials and employees of the Cheshire C.I., but Plaintiff was transferred to Corrigan in August of 2017, following the incident with Kashawn Brown. The requested preliminary injunction as to the Cheshire C.I. defendants is moot. Moreover, if Plaintiff's request is addressed to the Corrigan C.I. officials, they are non-parties to this action so the Court lacks personal jurisdiction over them.

As to mootness, Plaintiff initially requests that the Court preliminarily enjoin the defendant Cheshire C.I. officials, directing them to change his cell status to "single cell" at Corrigan. In his motion, Abrams expressly requests a "preliminary injunction against the defendant, Waters, et al./Dept. of Corrections." Doc. 6-1, at 1. A number of these defendants, including Waters, are no longer parties to this action, which implicates problems with *in personam* jurisdiction. However, to the extent that any of those addressed remain in this action (Phillips, Nunez, Watson), these Cheshire C.I. officials have no authority regarding cell assignments at Corrigan. Any mandatory injunction against those defendants would, therefore, be moot at this juncture.

"A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility." *Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) (quoting *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir.1996) (per curiam)). *See*

*also Salahuddin v. Goord,* 467 F.3d 263, 272 (2d Cir. 2006) ("[A]n inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility."); *Young v. Coughlin*, 866 F.2d 567, 568 n.1 (2d Cir. (1989) ("Since [inmate] Young is no longer incarcerated at Auburn, but was transferred to Attica Correctional Facility, his claim for declaratory and injunctive relief is moot."); *Altayeb v. Chapdelaine*, No. 3:16-CV-67 (CSH), 2016 WL 7331551, at *3 (D.Conn. Dec. 16, 2016) (dismissing claim for injunctive relief as moot because prisoner was transferred to different facility). "This result flows logically from the more generalized proposition that 'an actual controversy must be extant at all stages of the case, not just at the time the complaint is filed.'" *Id. (quoting Beyah v. Coughlin*, 789 F.2d 986, 988 (2d Cir.1986)).

In response to Defendants' opposition to his motion, which asserts mootness, Abrams contends that the injunctive relief he seeks should now be directed at Stephen Faucher, the current Warden at Corrigan C.I., where Abrams is presently confined. Doc. 15, at 2. Warden Faucher is not, however, a party to this action; nor are any officials at Corrigan. Normally, this Court cannot enjoin the actions of non-party individuals over whom it lacks *in personam* jurisdiction. *See, e.g.*, *Brown v. Johnson & Johnson*, No. 3:12-CV-01381 (MPS), 2013 WL 12286085, at *1 (D. Conn. July 17, 2013) ("Because UConn Health Center is not a party to this action, this Court does not have in personam jurisdiction over it" so "has no power to enjoin the actions of the UConn Health Center[.] . . . [T]he Motion for Temporary Restraining Order and Preliminary Injunction is denied."); *Tobin v. Doe*, No. 3:04-CV-952 (SRU), 2006 WL 680507, at *3 (D. Conn. Mar. 15, 2006)) ("Because the prison officials and medical personnel at Corrigan Correctional Institution against whom Tobin seeks injunctive relief are not parties to this action, the court does not have *in personam* jurisdiction over them.") (citing *Weitzman v. Stein*, 897 F.2d 653, 658-59 (2d Cir. 1990) and *Visual Sciences, Inc. v.*

13

*Integrated Commc'ns, Inc.*, 660 F.2d 56, 59 (2d Cir. 1981)).

Rules 65(d)(B) and 65(d)(C) of the Federal Rules of Civil Procedure permit injunctive relief to be ordered on "the parties' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with" the parties. Fed. R. Civ. P. 65(d)(B) and (C). However, there is no basis for this Court to find that Warden Faucher or any official at Corrigan is in active concert with the defendants in this action – Phillips, Nunez, and Watson – all of whom work at Cheshire C.I. Abrams does not allege that Faucher was involved in any of the Eighth Amendment or state law violations that occurred at Cheshire; and therefore, this Court will not impose a mandatory injunction upon him. To hold otherwise would essentially create a rule that all DOC employees are presumed to be in active concert and/or participation with one another whenever a prisoner sues a prison official.

The Court lacks personal jurisdiction over Warden Faucher and/or any other prison officials at Corrigan, who are not parties to this action. Therefore, despite Plaintiff's assertion that his motion "actually pertains to the Warden of a facility/Dept. Of Corrections," Doc. 15, at 1-2, the Court will not grant it. The Court has no personal jurisdiction over these non-party Corrigan officials.

The only remaining defendants in this action are Corrections Officer Phillips, Captain Nunez, and Captain Watson, all of whom are employees at Cheshire C.I. If Plaintiff addresses his preliminary injunction motion to them, the motion has been mooted by his transfer to Corrigan. Alternatively, if Abrams seeks injunctive relief against officials at Corrigan, the Court lacks personal jurisdiction over these non-defendants. In either situation, the Court will deny Plaintiff's request for injunctive relief.

**2. No Irreparable Harm**

Even if Plaintiff's request for injunctive relief were addressed to parties in this action and not moot, it would still fail on the merits because Plaintiff has not established the requisite "irreparable harm" to obtain injunctive relief. The crux of his argument for a single cell is that he seeks solace "[d]ue to the defendant's [sic] failure to protect [him] from 2 assaults by cellmates and one from a corrections officer."[8] Doc. 6-1, at 2. As set forth below, these are past incidents – only two of which occurred over a period of seventeen years. These attacks also took place at other prisons. In addition, there is no evidence to suggest that Plaintiff has any mental health issue which would require a single cell and no evidence to suggest that Plaintiff's current cellmate poses any hazard to him.[9]

In his motion, Abrams states that on October 23, 2017, he met with a "mental health doctor" and expressed a desire for a single cell to reduce his anxiety, caused by fear of a future attack by his cellmate.[10] Doc. 6, ¶¶ 18-19. Abrams based this alleged anxiety on two past assaults that were made on him in the last seventeen years. The first one was on April 11, 2011, by cellmate Kareem

---

[8] Plaintiff claims that his anxiety from these prior attacks has made him paranoid, which has caused him to be "on guard," "expecting the wors[t]." Doc. 6-1, at 3. He argues that "[w]ith single-cell status there's no worry of a cellmate attack and one can sleep comfortably and live stress-free." *Id.*

[9] In fact, Dr. Burns states in his Supplemental Affidavit that Plaintiff informed him that "although his current cellmate is 'young,' implying that he is immature, they do get along." Doc. 16, ¶ 16. Abrams further told Burns that "he has no complaints about his current cellmate." *Id.*, ¶ 26. Burns concluded from the interview that "[a]ny difficulty [Abrams] is experiencing with his cellmate would appear to be internally derived and self-generated." *Id.*

[10] Dr. Burns suggests that the clinician who "met with Mr. Abrams when he first arrived at Corrigan" was Mathew Eggen. Doc. 16, ¶ 28. In discussing Abrams with Eggen, they examined "possible approaches to monitor his concerns," none of which included a change to single-cell status. *Id.*

15

Hedge in MacDougall Correctional Institute. *Id.*, ¶ 20. The second one occurred six years later, on August 4, 2017, by cellmate Kashawn Brown in Cheshire C.I.[11] *Id.*, ¶ 2. In response to Abrams's request for single-cell status, the doctor allegedly replied that Abrams "should go through the courts." *Id.*, ¶ 18. Abrams interpreted this response as support for his request, as opposed to a statement that the courts could mandate such a request. As described *infra*, however, nothing in the October 2017 interview indicated that the clinician or doctor believed Abrams should receive a single cell.

Moreover, in the affidavits of Dr. Craig Burns, Director of Psychiatric Services, Burns attested that based on his review of Plaintiff's medical records and an in-depth interview he conducted with Plaintiff on December 5, 2017, "there is *not* a psychiatric reason to provide Mr. Abrams with 'single cell' status at this time."[12] Doc. 16, ¶ 29 (emphasis in original). According to Burns, Abrams is a "well-adjusted inmate" who works as a barber at Corrigan. Doc. 13-1, ¶ 9; Doc. 16, ¶ 27. During the December 5, 2017, interview with Burns, Abrams "made excellent eye contact, demonstrated no involuntary movement, and neither reported nor appeared to be experiencing any physical or obvious emotional distress." *Id.*, ¶ 12. As Burns has reported, throughout the prior seventeen years of his incarceration, Abrams has been classified as "Mental Health 1," indicating one who is "emotionally stable," with "no mental health history or current need" for treatment. Doc. 13-1, ¶ 17. After his August 2017 transfer to Corrigan, Abrams was

---

[11] The assault by Brown also allegedly precipitated an "excessive use of force" by Corrections Officer Phillips in subduing Abrams, which gave rise to the pending Eighth Amendment claim against that officer in this action. Doc. 6, ¶ 18.

[12] Defendants submitted two affidavit by Dr. Burns in opposition to Plaintiff's preliminary injunction motion. Doc. 13-1, 16.

classified as a "Mental Health 2" inmate, meaning that he has a "[h]istory of a mental health disorder that is not currently active or needing treatment; or [a] current mild mental health disorder not requiring treatment by a health professional." Doc. 16, ¶ 20. According to Burns, "[n]either of these classifications require the individual, so designated, to have contact with a mental health professional." *Id.*, ¶ 21.

Finally, at the end of Dr. Burns's supplemental affidavit, he suggests that if Abrams is experiencing distress due to the "tragic death of Abrams's son and the two assaults he experienced in DOC," Abrams might be classified as a Mental Health 3 and placed on the case load of a therapist at Corrigan. *Id.*, ¶¶ 22, 25. Mental Health 3 indicates a "mild to moderate mental health disorder" so that Abrams would be seen "no less than monthly to discuss any issues that might be generating difficulty for him." *Id.*, ¶ 26. Burns views this approach as "more adaptive" than any single cell status. *Id.*, ¶ 25. He unequivocally concludes that "there is *not* a psychiatric reason to provide Mr. Abrams with "single cell" status at this time." *Id.*, ¶ 29 (emphasis in original).

In sum, Abrams has failed to demonstrate that the state of his mental health warrants preliminary injunctive relief. He has submitted no evidence to show that his double-cell confinement at Corrigan will likely result in irreparable harm to his mental and/or physical well-being; and the evidence submitted by the Defendants points to the contrary. Based on the parties's submissions, including the affidavits of Dr. Burns, I conclude that there is no evidence that Plaintiff will sustain "irreparable harm" at this time if he is not placed on "single-cell status." His motion for preliminary injunction will be denied. *See Lopez*, 2010 WL 326206, at *11 (prisoner provided no medical or mental health opinions to support request for permanent confinement in single-cell).

### 3. No Likelihood of Success on the Merits

Lastly, and alternatively, Plaintiff has failed to establish another vital component in the standard to receive preliminary injunctive relief: a clear and substantial likelihood of success on the merits of his claims. "If a party [, such as Plaintiff,] seeks a mandatory injunction, *i.e.*, an injunction that alters the status quo by commanding the defendant to perform a positive act, he must meet a higher standard." *Lopez v. McEwan*, No. 3:08CV678 (JCH), 2010 WL 326206, at *8 (D. Conn. Jan. 22, 2010). In such circumstances, not only must the movant demonstrate irreparable harm, he "must make a clear or substantial showing of a likelihood of success' on the merits, . . . a standard especially appropriate when a preliminary injunction is sought against government." *Id.* (quoting *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006)).

As described above, "[s]haring a cell with another inmate is not unconstitutional." *Jarecke*, 552 F. Supp.2d at 266. *See also Lopez*, 2010 WL 326206, at *10 (denying inmate's request for an assignment to a "single-cell, recreation-alone status" where inmate had "not specified 'by whom and by what' he [was] threatened beyond general comments that his life [was] in jeopardy"). Simply having to share a cell is not a sufficient factual basis for an Eighth Amendment "failure to protect" claim. *Id.* Rather, to prove such a claim, the plaintiff must prove that he is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*

In this case, Abrams has submitted no evidence to show that an inmate attack is likely to occur in his cell. Rather, as Dr. Burns notes, Abrams "has no complaints about his current cellmate" so that his concerns about his cellmate are "self-generated." Doc. 16, ¶ 26. The two inmates actually "do get along." *Id.*, ¶ 16.

Moreover, to prevail on an Eight Amendment claim for unconstitutional conditions of

confinement, the prisoner must show that the conditions violate contemporary standards of decency. *See, e.g., Jarecke*, 552 F. Supp. 2d at 266. *See also Sosa v. Lantz*, 660 F. Supp. 2d 283, 291 (D. Conn. 2009) (denying motion for preliminary injunction regarding single-cell status for prisoner). Abrams has submitted no evidence to suggest that his current confinement at Corrigan violates contemporary standards of decency. Rather, as described *supra*, Plaintiff merely complains that he experiences difficulty sleeping "because [he is] always on guard anticipating another attack." Doc. 6, ¶ 17. As described above, he has submitted no evidence to show that another inmate attack is likely to occur. *See, e.g., Thompson v. Lantz*, No. 3:04-CV-2084 (AWT), 2005 WL 2387706, at *4 (D. Conn. Sep. 28, 2005) (possible future harm from cellmate held "insufficient to support request for injunctive relief" where any such assault was "speculative"). Any future harm from Abrams's current confinement is too speculative for this Court to order a mandatory injunction for single-cell status.

Abrams has not submitted any evidence showing that his double-cell confinement at Corrigan will likely result in irreparable harm to his mental and/or physical well-being. *See, e.g.*, *Lopez*, 2010 WL 326206, at *11 (denying request for preliminary injunction where "Lopez has provided no medical or mental health opinions to support his request for permanent confinement in single-cell, recreation-alone status"). Moreover, the evidence submitted by the Defendants points to the contrary. Medical analysis of Abrams's mental health issues indicates that these issues do not warrant preliminary injunctive relief. Dr. Burns evaluated Abrams, noted that he was getting along with his current cellmate at Corrigan, and concluded that any minor mental health issues from which Abrams is suffering would not be improved by assigning him single-cell status. *See* Doc. 16, ¶¶ 11, 16, 23-29. *See also Jarecke*, 552 F. Supp. 2d at 266 (denying motion for preliminary in injunction

because inmate "Jarecke ha[d] provided no medical or mental health diagnosis that would require his confinement in a single cell" and "[h]is mental health providers state[d] there [was] no such reason.").

### III. <u>CONCLUSION</u>

Based on the foregoing analysis, the Court concludes that Abrams is not entitled to preliminary injunctive relief. His motion for a preliminary injunction [Doc. 6] is hereby DENIED.

It is SO ORDERED.

Signed: New Haven, Connecticut
         March 26, 2018

                              */s/Charles S. Haight, Jr.*
                              CHARLES S. HAIGHT, JR.
                              Senior United States District Judge