UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID A. ABRAMS, No. 241224, a/k/a ABRAHAMS,<br><br>Plaintiff,<br>v.<br>CORRECTIONS OFFICER WATERS AND CAPT. NUNEZ, sued in their individual capacities; CORRECTIONS OFFICER PHILLIPS; DISCIPLINARY REPORT INVESTIGATOR KELLY; CAPT. JOHN WATSON; WARDEN SCOTT ERFE; MAINTENANCE SUPERVISOR JOHN DOE; and MAILROOM HANDLER CORRECTIONS OFFICER RAMIREZ, sued in their individual and official capacity,<br><br>Defendants. | Civil Action No.<br>3: 17 - CV - 1659 (CSH)<br><br><br><br>JUNE 8, 2018 |

**RULING ON MOTION TO AMEND COMPLAINT [DOC. 18]**

**Haight, Senior District Judge:**

## I. INTRODUCTION

On October 10, 2017, *pro se* plaintiff, David A. Abrams, an inmate currently incarcerated at Corrigan-Radgowski Correctional Center ("Corrigan") in Uncasville, Connecticut, filed a civil rights complaint pursuant to 42 U.S.C. § 1983 against various prison officials employed at Cheshire Correctional Institution ("Cheshire C.I."), where he was previously housed. These defendants include: Corrections Officer Waters, Captain Nunez, Corrections Officer Phillips, Disciplinary Report Investigator Kelly, Captain John Watson, Warden Scott Erfe, Maintenance Supervisor John Doe, and Corrections Officer Ramirez. In his complaint, Plaintiff alleged, *inter alia*, violations of

1

his Fourth Amendment protection against unreasonable searches, his Eighth Amendment protection against cruel and unusual punishment, and his Fourteenth Amendment right to due process. He also brought various state tort laws.

On February 2, 2018, this Court issued its Initial Review Order ("IRO") permitting Abrams to proceed with his Eighth Amendment claims of: (1) excessive force against Phillips, (2) "failure to protect from harm" against Nunez, and (3) unlawful subjection to hazardous conditions of confinement against Watson. Doc. 17 (IRO), at 34-35.[1] The Court also permitted the state law claims of assault, battery, and intentional infliction of emotional distress to proceed against Phillips in his individual capacity for damages. *Id.*, at 33, 35.

On the other hand, the Court dismissed all claims against defendants Erfe, Doe, and Ramirez because there were no factual allegations that these defendants "were involved in, or even knew about, the constitutional violations for which [Plaintiff] seeks to hold them liable." *Id.*, at 11. The Court also dismissed Plaintiff's Fourth and Eighth Amendment claims regarding the strip search he underwent before his transfer to the segregation unit.[2] *Id.,* at 19-23. In addition, the Court dismissed Plaintiff's Fourteenth Amendment due process claim against Kelly and Waters for failure to investigate and document the events of August 4, 2017, the alleged assault by Plaintiff's cellmate, Brown, upon Plaintiff. *Id.*, pp. 23-25.

On February 23, 2018, Abrams filed the instant "Motion for Leave to File an Amended

---

[1] This Initial Review Order [Doc. 17] appears as a slip opinion on Westlaw, cited as *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717 (D. Conn. Feb. 2, 2018). When discussing the IRO, the Court cites alternatively to Doc. 17 and 2018 WL 691717 herein.

[2] Because Plaintiff failed to designate who performed or ordered the strip search and/or whom his claim was against, the Court analyzed the Fourth and Eight Amendment claims generally to determine whether they stated plausible claims for a constitutional violation. Doc. 17, at 19.

Complaint" with an attached proposed amended complaint. Doc. 18. Through this amended complaint, Abrams seeks "to allege facts sufficient enough to develop plausible claims" and "respectfully requests [that] this Court . . . reconsider claims [it] dismissed." *Id.*, at 1. Plaintiff's motion also seeks clarification on certain facts mentioned in the Court's IRO. *Id.*, at 2. This Ruling resolves the motion to amend and requests for clarification.

In general, a plaintiff may file an amended complaint as a matter of course within 21 days after service of the complaint under Rule 15(a), Fed. R. Civ. P. As described *supra*, the Court filed its IRO on February 2, 2018, directing the Clerk to serve the Complaint upon the remaining defendants in the action. Plaintiff filed his request to amend on the twenty-first day thereafter and thus well within 21 days after service. Under these circumstances, pursuant to Rule 15(a)(1)(A), Plaintiff may amend his complaint "once as a matter of course." The Court will therefore accept Plaintiff's amended complaint.

However, because the Court retains its duty to perform a *sua sponte* initial review of a prisoner's claims against governmental entities or their officers under 28 U.S.C. § 1915A, the Court must now review the amended complaint to determine whether any included claim is "frivolous, malicious, or fails to state a claim upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2). In addition, because Plaintiff is a prisoner who is proceeding *in forma pauperis*, the Court must "dismiss the case at any time if [it] determines that – . . . the action or appeal – (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C.A. § 1915 (e)(2). Therefore, if any claim within the amended complaint is frivolous, fails to state a plausible claim, or seeks recovery from an immune defendant,

3

that claim must be dismissed.

As set forth below, a review of the proposed amended complaint reveals that the claims Plaintiff has attempted to reinstate and the newly added claim for First Amendment retaliation against Erfe and Watson fail to state claims upon which relief may be granted. *See* 28 U.S.C. §§ 1915A(b)(1), 1915(e)(2); *see also Kenyon v. Weber,* No. 16-CV-6510-FPG, 2017 WL 6534049, at *3 (W.D.N.Y. Dec. 21, 2017) (screening claim in amended complaint under §§ 1915A and 1915(e)(2), holding that "the Amended Complaint fails to state a plausible claim of deliberate indifference to Plaintiff's leg injury and therefore this claim is dismissed with prejudice"). Accordingly, the amended complaint will be allowed to proceed only with respect to claims upon which relief may be granted.

## II. DISCUSSION

### A. Motion to Amend Complaint - Rule 15, Fed. R. Civ. P.

In response to the Court's review of his claims in its IRO [Doc. 17], Abrams filed the present motion to amend his complaint. *See* Doc. 18. In so doing, he requests the Court to reinstate his Fourteenth Amendment due process claim regarding the investigation into the events of August 4, 2017 (when Abrams was allegedly assaulted by his cellmate Brown); his Fourth and Eighth Amendment claims regarding the strip search conducted prior to his placement in segregation; and his invasion of privacy claim regarding his legal mail. *Id.*, ¶¶ 69-101, 112-18. Abrams also seeks to raise a new claim of First Amendment retaliation against Erfe and Watson. *Id.*, ¶¶ 102-11.

As described above, pursuant to Federal Rule of Civil Procedure 15, a plaintiff may amend his complaint once as a matter of course within twenty-one days after service of the complaint or within twenty-one days after service of a responsive pleading (*i.e.,* answer or motion to dismiss),

4

whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1)(A) and (B). In all other cases, the plaintiff may amend his complaint only with the Court's leave. Fed. R. Civ. P. 15(a)(2). In the present case, Abrams filed his motion for leave to amend and his amended complaint twenty-one days after the Court issued its IRO, ordering service of the original complaint upon the defendants. Therefore, Plaintiff may file an amended complaint once within that period as a matter of right under Rule 15(a)(1).

The Court will grant the motion to amend and accept the amended complaint. The only remaining issue, therefore, is whether the Court should reinstate the claims it dismissed in its Initial Review Order and/or allow Plaintiff's newly pled First Amendment retaliation claim to proceed based on the allegations in the amended complaint.

B. **Standard to Review Claims in Amended Complaint**

In its IRO, the Court set forth the applicable standard of review for analyzing a *pro se* prisoner's civil rights complaint. Specifically, under 28 U.S.C. § 1915A, the Court must review the complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)-(2).[3] Highly detailed allegations are not required, but the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)).[4] "A claim has facial plausibility when the plaintiff pleads factual content

---

[3] *See also* 28 U.S.C. § 1915(e)(2) and Part I., *supra*.

[4] The Second Circuit has consistently adhered to the United States Supreme Court's seminal plausibility standard set forth in *Iqbal*. *See, e.g., Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 401 (2d Cir. 2015); *New*

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (quoting *Twombly*, 550 U.S. at 555).

"Although all allegations contained in the complaint are assumed to be true, this tenet is 'inapplicable to legal conclusions.'" *LaMagna v. Brown*, 474 F. App'x 788, 789 (2d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). Therefore, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir.2008) (internal quotation marks omitted)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

Because Plaintiff is a *pro se* litigant, his "[*p*]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)(per curiam)). *See also Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (same)*; Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants); *Boykin v. KeyCorp*., 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed *pro se* is to be liberally construed and a *pro se*

---

*Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 119-20 (2d Cir. 2013).

complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (Where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally.") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) ("In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[].").

Although subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). Nor may the Court "invent factual allegations" that the plaintiff has not pleaded. *Id.*

**C.** **Plaintiff's Proposed Additional Claims**

    **1.** **Due Process**

In his initial complaint, Abrams alleged that Kelly and Watson failed to properly investigate the assault upon him on August 4, 2017, which resulted in his placement in the segregation unit at Cheshire C. I. for twenty days. Doc. 1, ¶¶ 48, 73-74. The disciplinary report that was issued against Abrams in connection with the assault was ultimately dismissed. *Id.*, ¶ 47. In its IRO, the Court found that Abrams's due process claim against Kelly and Watson failed to state a claim because Plaintiff was unable to show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," as described in *Sandin v. Conner*, 515 U.S. 472,

7

484-87 (1995).

In *Sandin*, the Supreme Court expressly held that a state prisoner who is subjected to disciplinary punishment that is within the prisoner's expected condition of confinement cannot establish deprivation of a protected liberty interest." 515 U.S. at 484. Only disciplinary actions which impose an "atypical and significant hardship in relation to the ordinary incidents of prison life" may constitute a constitutional deprivation. *Id.* In light of the prisoner's sentence of "an indeterminate term of 30 years to life," the Supreme Court held that 30 days of segregation "was within the range of confinement to be normally expected." *Id.* at 487. Therefore, that inmate's confinement in disciplinary segregation for thirty (30) days did not constitute an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484-85.

In its IRO, this Court held that Abrams, who is serving a fifty-one year term of imprisonment, failed to state a plausible due process claim based on his twenty (20) days of confinement in segregation. 2018 WL 691717, at *12. Such a period of segregation, given the length of his sentence and terms of imprisonment, did not impose an atypical and significant hardship upon him. Moreover, he received an evidentiary hearing, after which his disciplinary ticket was ultimately dismissed. Accordingly, Plaintiff received at least "the minimum procedures appropriate to insure that his due process rights [were] not arbitrarily abrogated." *Id.* (citing *Wolff v. McDonnell*, 418 U.S. 529, 558 (1974)).

In his proposed amended complaint, Abrams fails to allege any additional facts to establish that he was subjected to an "atypical and significant hardship" when confined in segregation for twenty days. He alleges that he "feels discrimination played a key role" in Kelly's and Watson's failure to investigate and document the assault and believes that Kelly was trying to "screw him

over." Doc. 18, ¶¶ 73, 77. These allegations are, however, insufficient to state a plausible due process violation under the Fourteenth Amendment. Therefore, the Court will not reinstate the Fourteenth Amendment claim against Kelly and/or Waters. That claim will be dismissed with prejudice.

### 2. **Intrusive Strip Search – Fourth Amendment and Eighth Amendment Claims**[5]

In his initial complaint, Abrams alleged that, before placing him in the segregation unit at Cheshire, correction officials ordered him to undergo a strip search.[6] Doc. 1, ¶ 40. After removing his clothing, Abrams was ordered "to bend over at the waist [and] spread his butt cheeks for the [corrections officer], which is the policy only at Cheshire . . ." *Id.* When Chauncey Moore, a prisoner in a neighboring cell in the segregation unit, questioned Captain Watson about "this type of intrusive strip search," Watson told him that it was "facility policy." *Id.*, ¶ 82.

Relying on the United States Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78, 107 (1987), the Court dismissed Abrams's Fourth Amendment challenge to the strip search because Plaintiff failed to allege facts to show that the strip search was unreasonable or unrelated to a penological interest, such as protecting staff and other inmates from the transportation of weapons or contraband into the segregation unit. *Abrams*, 2018 WL 691717, at *10.

---

[5] Plaintiff labels this claim "Sexual Harassment and Intrusive Strip Search." However, even construing the amended complaint to state the strongest arguments it suggests, Plaintiff includes no allegations of sexual harassment.

[6] As the Court noted in its IRO, Plaintiff "fail[ed] to allege any facts to prove that the search was done improperly or to explain why he believes that searching a prisoner before placing him in segregation is unconstitutional." 2018 WL 691717, at *9. Plaintiff also "fail[ed] to designate who performed or ordered the search and/or whom his claim is against." *Id.* The only defendant Plaintiff named in regard to this claim was Captain Watson, who stated that the search was "facility policy." *Id.*

In the case at bar, "a Connecticut Department of Corrections ("DOC") regulation requires a strip search upon a prisoner's placement in specialized housing." *Id.* (citing State of Connecticut Administrative Directive 6.7 ("Searches Conducted in Correctional Facilities"), at § 5(A)). That regulation is "reasonably related to legitimate penological interests" – ensuring that no weapon or contraband item is being transported when a prisoner is transferred into the specialized housing unit" *Id.* (citing *Holloway v. Dep't of Corr.,* No. 3:11-CV-1290 (VLB), 2013 WL 4834657, at *5 (D. Conn. Sept. 10, 2013)). The Court thus dismissed the Fourth Amendment claim relating to an "intrusive strip search" as failing to state a plausible claim.

In addition, the Court dismissed Plaintiff's Eighth Amendment claim regarding the strip search because Plaintiff failed to allege that the search was conducted for sexual gratification or for some other harmful purpose. 2018 WL 691717, at *11 (citing *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015) ("[A] search may not be undertaken maliciously or for the purposes of sexually abusing an inmate")).

In his amended complaint, Abrams now argues that the strip search policy at Cheshire is unconstitutional because the manner in which it is conducted is "humiliat[ing]" and, if a prisoner refuses to comply with the search, he is often placed in leg shackles until he complies and is "checked on by medical personnel every 72 hours for proper blood flow [and] adjustment of the shackles [and] chain." Doc. 18 ("Amended Complaint"), ¶¶ 92-96. Moreover, these restraints make it "impossible" for the inmate to sleep or use the bathroom. *Id.*, ¶ 97.

With respect to humiliation, a strip search necessarily incurs upon a prisoner's privacy because it is "of an intensely personal nature." *Crawford v. Cuomo*, 796 F.3d 252, 258 (2d Cir. 2015). The body of the prisoner must be examined to determine whether weapons or contraband

are concealed. However, unless the search is conducted in an unreasonable manner, such as when the officer conducting the search has an "intention of humiliating the inmate or deriving sexual arousal or gratification from the contact," the search does not violate the inmate's constitutional rights. *Id. See also, e.g.*, *Walker v. Ponte*, No. 14 CIV. 8507 (ER), 2016 WL 4411415, at *4 (S.D.N.Y. Aug. 18, 2016)("[C]ourts have acknowledged the degree to which strip searches may humiliate and 'invade the personal privacy of inmates,' and have nonetheless upheld the use of strip searches where they further the legitimate interest of discovering contraband.") (citing *Bell v. Wolfish*, 441 U.S. 520, 560 (1979); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation.").

Furthermore, as to alleged punishments imposed for failure to comply with a search, Plaintiff's allegations fail to make the search itself unreasonable and/or to cure the factual deficiencies of the initial complaint. Once again, Abrams has alleged no facts to show that strip search upon transfer to a new unit is unrelated to legitimate penological and/or security objectives; nor has he alleged that the search he underwent was conducted for a harmful purpose, such as malice or sexual abuse.[7] Accordingly, his Fourth and Eighth Amendment claims regarding the strip search conducted at Cheshire continue to fail to state a claim. They will not be reinstated and will be dismissed with prejudice.

### 3. **Retaliation**

Abrams attempts to raise a new claim that Erfe and Watson transferred him from Cheshire

---

[7] As noted in footnote 5, *supra*, Plaintiff has included "sexual harassment" in the title to this intrusive strip search claim. However, he provides no factual allegations to support such a label.

to Corrigan in retaliation for grievances he filed and for the purpose of preventing his access to a law library to litigate a civil suit. Doc. 18, ¶¶ 102-11. Plaintiff alleges the following facts in support of this claim. On August 6, 2017, Abrams submitted a written inmate request to Warden Erfe, notifying him that Abrams was assaulted by Phillips. *Id.*, ¶ 102. Abrams received no response from Erfe. *Id.* The next day, Abrams requested that Captain Nunez provide him with video surveillance footage of the North 1 Unit. *Id.*, ¶ 103. Plaintiff followed this request by bringing two grievances "regarding claims in his complaint on August 21, 2017." *Id.*, ¶ 105.

On August 23, 2017, Abrams was transferred from Cheshire to Corrigan. *Id.*, ¶ 106. Plaintiff alleges that Corrigan "is regarded as the worst Level 4 facility in the state due to the fact that there is no access to a law library, the facility is constantly on lockdown status; there are no contact visits; there are only 8 TV stations:" and the prison "seems to operate by a different set of mandated rules than other facilities in the state." *Id.*, ¶ 107. Because Erfe was formerly the warden at Corrigan, he "knows how Corrigan is run." *Id.*, ¶ 108.

Plaintiff alleges that "[a]s a result of all the paperwork [he] filed while in segregation [and] the obvious filing of a civil suit which was imminent," Erfe and Watson transferred him to Corrigan "as retaliation for the imminent exercise of his right of court access that would be drastically hindered due to his not having access to a law library to properly prepare [and] litigate a civil suit." *Id.*, ¶ 109. Plaintiff further alleges that "[i]t is common knowledge throughout the prison system that for the most part prisoners are transferred to Corrigan as some 'sort of punishment.'" *Id.*, ¶ 110. Abrams concludes that the decision of Erfe and Watson to transfer him to Corrigan was an act of retaliation for his "imminent exercise of his right of access to the courts," in violation of his First, Fifth, and Fourteenth Amendment rights. *Id.*, ¶ 111.

A prisoner's claim that a prison official retaliated against his constitutionally protected speech or expressive conduct is generally analyzed under the First Amendment. Construing Plaintiff's allegations liberally, the Court will analyze Abrams' claim as a First Amendment challenge of retaliation under 42 U.S.C. § 1983, which holds as liable any person who, under color of state law, deprives another of his constitutional rights and privileges.

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Riddick v. Arnone*, No. 11 Civ. 631 (SRU) 2012 WL 2716355 *6 (D. Conn. July 9, 2012) (citing *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000)). "To prevail on a First Amendment retaliation claim, [a prisoner] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the [prisoner], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation and internal quotation marks omitted). *See also Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)(same). Because "claims of retaliation are easily fabricated," courts must consider them "with skepticism and require that they be supported by specific facts."[8] *Riddick*, 2012 WL 2716355 *6. Conclusory statements will not suffice. *See, e.g., Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 2003). The prisoner bears the burden of showing that "the protected conduct was a substantial and motivating factor in the prison officials' disciplinary decision." *Holland*, 758

---

[8] As the Second Circuit stated in *Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003):

Courts properly approach prisoner retaliation claims "with skepticism and particular care," because "virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act."

320 F.3d at 352 (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001)).

13

F.3d at 225 (internal quotation marks omitted).

The allegations set forth in Plaintiff's amended complaint fail to state a plausible retaliation claim against Erfe or Watson. To the extent Plaintiff believes Erfe and Watson retaliated against him because he made an inmate request, filed two grievances regarding the assault in his cell on August 4, 2017, and/or planned to file an "imminent civil suit," the filing of a prison grievance or lawsuit may be considered constitutionally protected speech. However, no facts are alleged to demonstrate a causal connection between said protected speech and the alleged adverse action of transferring Plaintiff to a prison without library access. Moreover, no factual allegations show that Erfe or Watson knew about Abrams's desire or attempt to access a law library, much less that the transfer order was tailored to prevent such access. There is also no proof that Erfe and/or Watson ordered the transfer for the purpose of attempting to prevent Plaintiff from bringing the present action.

In order to state a claim for First Amendment retaliation, the inmate bears the burden of showing that "the protected conduct was a substantial or motivating factor" in the prison officials' disciplinary decision. *Holland*, 758 F.3d at 225-26 (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996)). Here, Plaintiff provides no facts to demonstrate a link between the transfer order and Plaintiff's alleged protected speech. There are no factual allegations that either Erfe or Watson considered library access, or knew of Plaintiff's desire to use a library, when making the transfer.

"[P]rison officials have broad discretion to transfer prisoners 'for any reason or no reason at all,' but may not transfer solely in retaliation for exercise of First Amendment rights." *Gonzalez v. Narcato*, 363 F. Supp. 2d 486, 496 (E.D.N.Y. 2005) (quoting *Montanye v. Haymes*, 427 U.S. 236, 243 (1976)). In the present case, there are no factual allegations to show that Plaintiff's transfer to Corrigan was ordered in retaliation for his inquiries, grievances, or plans to bring a civil case. *See,*

*e.g.*, *Gonzalez* , 363 F. Supp. 2d at 497 (granting summary judgment on retaliation claim because Plaintiff offered solely "conclusory allegations" regarding the reason for his transfer : "Plaintiff fails to demonstrate that his letter writing to outside officials was a substantial or motivating factor in defendants' decision to transfer him"). Because he has only made "conclusory allegations" regarding the reason for his transfer, Abrams's First Amendment retaliation claim is barred under 28 U.S.C. § 1915A(b)(1) for failing to state a claim.

4. **Invasion of Privacy of Legal Mail against Ramirez**

In his Amended Complaint, Plaintiff once again attempts to state a claim for "invasion of privacy" regarding his legal mail against "Mailroom Handler and Corrections Officer" Ramirez, whom Plaintiff asserts is "responsible for opening and inspecting mail." Doc. 18, at ¶ 118. The amended claim, however, stills fails to state a plausible claim because it fails to allege that Ramirez opened or knew about the opening of Plaintiff's particular "legal mail." "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977)).[9] *See also, e.g.*, *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)

---

[9] In *Williams v. Smith*, the Second Circuit provided a list of the several ways a defendant may be personally involved in a constitutional deprivation within the meaning of 42 U.S.C. § 1983:

> The defendant may have directly participated in the infraction. A supervisory official, after learning of the violation through a report or appeal, may have failed to remedy the wrong. A supervisory official may be liable because he or she created a policy or custom under which unconstitutional practices occurred, or allowed such a policy or custom to continue. Lastly, a supervisory official may be personally liable if he or she was grossly negligent in managing subordinates who caused the unlawful condition or event.

781 F.2d at 323–24 (internal citations omitted). In the case at bar, there are no factual allegations to suggest that Ramirez was personally involved through any of the listed means.

(dismissing claims for lack of defendants' "personal involvement" where "plaintiff's claim for monetary damages against these [supervisory official] defendants requires a showing of more than the linkage in the prison chain of command"); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977) ("In this Circuit personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under §1983;" so the fact that Commissioner was in a position of authority was an insufficient basis for personal liability); *Vega v. Artus*, 610 F. Supp. 2d 185, 199 (N.D.N.Y. 2009) ("[A] Section 1983 plaintiff must allege a tangible connection between the acts of the defendant and the injuries suffered.") (citations and internal quotation marks omitted).

As stated in the IRO, Plaintiff has brought this claim against Ramirez based merely on his supervisory position in the mailroom at Cheshire C.I. There is no factual allegation that Ramirez performed any particular action to violate Plaintiff's right to privacy, knew of the alleged violation, implemented a set policy to invade "legal mail," and/or was grossly negligent in managing subordinates in the mailroom. Plaintiff merely alleges that on August 16, 2017, he "sent out mail to a Fairfield County Lawyer Referral Service" with "legal mail" printed on the envelope; Plaintiff was transferred to Corrigan on August 23, 2017; the alleged "legal mail" he sent was returned to Cheshire C.I., because the post office "was unable to forward [it] some time after [he] was transferred;" and when Plaintiff received the "legal mail" at Corrigan on Sept. 13, 2017, it was opened." Doc. 18-1, at 26 (¶¶ 112-117). Plaintiff makes the conclusory allegation that his "legal mail" was "opened at [the] Cheshire facility out of the plaintiff's presence and forwarded to him." *Id.*, ¶ 117.

There are no factual allegations that Ramirez opened the "legal mail" to which Plaintiff refers or how and when the letter was opened. Plaintiff merely alleges that the letter was "opened at

Cheshire facility out of the plaintiff's presence and forwarded to him." *Id.* In the absence of facts that show "personal involvement" by Ramirez, Plaintiff's allegations are insufficient to allege a constitutional deprivation. Plaintiff's claim for invasion of privacy regarding his legal mail will be dismissed with prejudice.

### D. Clarification of Facts

Finally, Abrams seeks to correct or clarify facts included in the Court's IRO. *See* Doc. 18, at 2. First, he argues that the Court mistakenly stated that, "[a]s Correction Officers Johnson and Phillips entered the cell, Abrams stumbled forward and collided with a chair" when, in his initial complaint, he alleged that he "stumbled forward colliding into the chair kicking it out of his path." *Id.* (quoting Doc. 10, p. 5; citing Doc. 1 (Complaint), ¶ 24). The Court accepts Plaintiff's account of his kicking the chair out of his path, but notes that such a correction has no impact on the Court's holdings in the IRO or this Ruling. In particular, the Court has already allowed the excessive force claim to proceed against Phillips, regardless of whether Plaintiff merely collided with a chair or stumbled into it and kicked it out of his path.

Second, Plaintiff wishes the Court to note that, contrary to the Court's statement in the IRO that inmate Carrilli assaulted him, Plaintiff merely asked Captain Nunez "that he not be paired up with another 'high security prisoner' as a cellmate." Doc. 18, at 2-3 (citing Doc. 1, ¶ 58). In other words, Plaintiff wishes the Court to acknowledge that Carrilli did not assault him. The Court accepts Plaintiff's clarifications as additions to its IRO, but again notes that they do not alter the Court's Rulings in the IRO or herein.[10] The fact that "high security" inmate Carrilli was "not getting along"

---

[10] The Court notes that, after filing his Complaint, Plaintiff alleged in his motion for Preliminary Injunction that he has been attacked *twice* by inmates in the prison system and clarified that the inmate other than Brown who allegedly assaulted him was Kareem Hedge. Doc. 6, ¶ 4.

with Plaintiff, but never actually assaulted him, does not alter the Court's holding that Plaintiff's Eighth Amendment claim against Nunez for failure to protect states a claim upon which relief may be granted.

The Court accepts Plaintiff's proffered factual clarifications and leaves him to his proof regarding all factual allegations in support of his claims.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's "Motion for Leave to File An Amended Complaint" [Doc. 18]. Pursuant to Federal Rule of Civil Procedure 15(a)(1), Plaintiff may amend his pleading "once as a matter of course within: 21 days after serving it." However, to the extent that Plaintiff has included claims in his amended complaint which were dismissed by the IRO and an additional claim which fail to state viable claims, those claims are futile and must be stricken pursuant to the Court's duty to screen said claims under 28 U.S.C. §§ 1915A and 1915(e)(2). The stricken claims include: Abrams's previously dismissed claims (a due process claim against Kelly and Watson for alleged failure to investigate the incident in Plaintiff's cell on August 4, 2017; Fourth and Eighth Amendment claims related to an allegedly intrusive strip search conducted prior to Plaintiff's placement in segregation; and a claim for invasion of privacy of legal mail against Ramirez) and his newly added claim for First Amendment retaliation against Erfe and Watson. These claims are now dismissed with prejudice.

Plaintiff's action may proceed only on the claims designated by the Court in its original IRO,

---

That assault occurred at MacDougall C.I. on April 11, 2011, so it preceded Plaintiff's confinement in Cheshire and Corrigan. *Id.* With respect to inmate William Carrilli, Plaintiff alleges that Carrilli did not assault him but rather "complained to Nunez that he and the plaintiff were not getting along" so that "Nunez promptly moved the plaintiff to a different empty cell." Doc. 1, ¶ 56. According to Plaintiff, Carrilli was a "high security" prisoner who was "well known for his racist views." *Id.,* ¶ 57.

which were also included in the Amended Complaint. These actions include: (1) the Eighth Amendment excessive force claim against Phillips, (2) the Eighth Amendment failure to protect claim against Nunez, (3) the Eighth Amendment hazardous conditions of confinement claim against Watson, and (4) the state law claims for assault, battery, and intentional infliction of emotional distress against Phillips.

The Court hereby accepts Plaintiff's proposed "Amended Complaint" (Doc. 18-1) with respect to the designated claims permitted per this Ruling as the operative complaint. Upon entry of this Ruling, the Clerk is directed to file Plaintiff's "Amended Complaint" [Doc. 18-1] as a separate entry on the case docket. Defendants must thereafter answer or respond to that pleading on or before July 6, 2018.

The foregoing is SO ORDERED.

Dated: New Haven, Connecticut
      June 8, 2018

                                      */s/Charles S. Haight, Jr.*
                                      CHARLES S. HAIGHT, JR.
                                      Senior United States District Judge