UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| DAVID A. ABRAMS, No. 241224, a/k/a ABRAHAMS,<br><br>Plaintiff,<br>v.<br><br>CORRECTIONS OFFICER WATERS AND CAPT. NUNEZ, sued in their individual capacities; CORRECTIONS OFFICER PHILLIPS; DISCIPLINARY REPORT INVESTIGATOR KELLY; CAPT. JOHN WATSON; WARDEN SCOTT ERFE; MAINTENANCE SUPERVISOR JOHN DOE; and MAILROOM HANDLER CORRECTIONS OFFICER RAMIREZ, sued in their individual and official capacity,<br><br>Defendants. | Civil Action No.<br>3: 17 - CV - 1659 (CSH)<br><br><br><br>DECEMBER 21, 2019 |

**RULING ON PLAINTIFF'S SECOND MOTION FOR LEAVE TO FILE
AN AMENDED COMPLAINT [DOC. 51]**

**Haight, Senior District Judge:**

### I. INTRODUCTION

*Pro se* plaintiff, David A. Abrams, an inmate currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, has brought this civil rights action pursuant to 42 U.S.C. § 1983 against various prison officials employed at Cheshire Correctional Institution ("Cheshire C.I."), where he was previously housed. Following the Court's "Initial Review Order" (entered 2/2/2018) and the Court's "Ruling" granting Plaintiff's motion for leave to file an Amended Complaint (entered 6/8/2018), the defendants remaining in the action include: Corrections Officer

1

Phillips, Captain Nunez, and Captain John Watson (herein "Defendants").[1] The claims which the Court ruled may proceed as plausible claims are: (1) the Eighth Amendment excessive force claim against Phillips, (2) the Eighth Amendment failure to protect claim against Nunez, (3) the Eighth Amendment hazardous conditions of confinement claim against Watson, and (4) the state law claims for assault, battery, and intentional infliction of emotional distress against Phillips.

## II. DISCUSSION

### A. Plaintiff's Second Request to Amend

Currently pending before the Court is Plaintiff's second motion to amend his complaint, Doc. 51. Through this motion, Plaintiff seeks to add new claims – for cruel and unusual punishment and deliberate indifference to his serious medical needs – and two new defendants, Corrections Officers Rivera and Johnson. Plaintiff alleges these proposed claims arose after corrections officers intervened to end an altercation between Plaintiff and his cell mate, John Brown, whom Plaintiff alleges attacked him on August 4, 2017. Specifically, Plaintiff requests to add: (1) deliberate indifference to his serious medical needs by Officers Rivera and Johnson, who when waiting with Plaintiff in the examination room at UCONN Medical Center in August 2017 failed to do more than provide Plaintiff with "cold[,] damp paper towels for him to apply" to portions of his body that he claims were burning from mace; and (2) failure to allow Plaintiff to shower until nine hours passed "after being mased [sic]." Doc. 51, at 4 (¶¶ 119-23).

### B. Standard to Amend Complaint

Pursuant to Federal Rule of Civil Procedure 15, a plaintiff may amend his complaint once

---

[1] The Court's "Initial Review Order" and the "Ruling" on Plaintiff's motion to amend his Complaint are published, respectively, at: *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717 (D. Conn. Feb. 2, 2018) and 2018 WL 2926294 (D. Conn. June 8, 2018).

2

as a matter of course within twenty-one days after service of the complaint; or within twenty-one days after service of a responsive pleading or twenty-one days after service of a motion under Rule 12(b), (e), or (f), , whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1)(A) and (B). In all other cases, the plaintiff may amend his complaint only with the opposing party's written consent or the Court's leave. Fed. R. Civ. P. 15(a)(2). In the present case, Abrams has filed his *second* motion for leave to amend so may not amend his complaint as a matter of right. Absent opposing parties' written consent, which he does not have, Plaintiff may only amend "with the court's leave," which shall be "freely give[n] . . . when justice so requires." *Id*.

Whether to grant leave to amend ultimately lies within the court's discretion, taking into account factors set forth by the United States Supreme Court in *Foman v. Davis*, 371 U.S. 178, 182 (1962). Under *Foman*, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought [to amend] should, as the rules require, be 'freely given.' " 371 U.S. at 182.

In addition, with respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.' " *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). A proposed amended complaint by a *pro se* litigant will thus be construed liberally, assuming the truth of the allegations and interpreting them to raise the strongest arguments they may suggest. *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).

C.  Analysis

   1. *Undue Prejudice and Undue Delay to Amend*

Upon careful review of Plaintiff's motion, the Court finds that leave to amend in the present circumstances would result in undue prejudice to the Defendants. In determining what constitutes prejudice, the Court considers whether the amendment would: "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). "The longer the period of unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983) (citation omitted).

In the case at bar, discovery should have proceeded to the point of completion so that adding new claims and new defendants at this point would inflict "undue prejudice" on the current defendants, who would have to incur additional time and expense to investigate the new claims. Also, the addition of the new defendants and new claims would cause significant delay in the resolution of this action, which has been pending for two years and is trial ready.

Furthermore, Plaintiff has unduly delayed seeking this amendment because he had a prior opportunity to amend, and he was always aware of the facts which comprise the bases for bringing the new claims. Plaintiff commenced this action in October 2017 and has already been granted leave to amend once in this action. *See Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 2926294, at *1 (D. Conn. June 8, 2018). In his second request to amend, Plaintiff provides no explanation why he could not have included these claims and new defendants as part of that first motion to amend.

Although Plaintiff states that he decided to seek amendment after reviewing documents

4

during discovery, the new facts Plaintiff now alleges were all within his personal knowledge *before* discovery. For example, Plaintiff had personal knowledge of the way he was treated while waiting in the examination room at UCONN Medical Center following the incident at issue. He also knew the circumstances and timing of when he was allowed to shower. Plaintiff simply wishes to add these claims because he has realized "while reviewing some of the discovery" that he failed to include them. Doc. 51, at 1 (¶ 2). However, he did not need to review documents to discover the facts which allegedly give rise to his proposed amendments.

Given this undue delay, allowing Plaintiff to proceed with this latest round of amendments would be unduly prejudicial to the defendants. *See, e.g., Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 348 (D. Conn. 2012) ("[T]he Court denied Plaintiff's motion to amend the complaint finding that since the Plaintiff has already amended the complaint twice," and the Court has already made additional rulings, "another amendment which adds entirely new causes of action at this late stage in the litigation would create prejudice to the opposing party as discovery is significantly complete and such new causes of action will require significant resources to conduct additional discovery and create additional delay in the resolution of the dispute.") (internal quotation marks omitted); *Hybrid Athletics, LLC v. Hylete,* LLC, No. 3:17-CV-1767 (VAB), 2018 WL 4323816, at *2 (D. Conn. Sept. 10, 2018) ("A court may also consider 'other relevant factors, including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants.'") (quoting *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 244 (2d Cir. 2007)).

Plaintiff argues that "the defendants will not be prejudiced [by his proposed amendments] because they have not entirely completed the plaintiff's discovery requests." Doc. 51, at 2 (¶ 6).

However, the date by which Defendants were set to respond has expired. Moreover, Plaintiff's argument regarding answers fails to take into account that answering requests is only part of discovery. Defendants would have to make their own new discovery requests and/or take depositions to defend against new claims, which allegedly arose from events which occurred at times other than those giving rise to the currently operative claims. In other words, new claims and new defendants would necessitate a whole new round of discovery at this late date in the proceedings (*i.e.*, after discovery has closed).

### 2. *Futility of Proposed Claims*

As to the addition of the two new defendants, the Court notes that even if Plaintiff's request to bring "cruel and unusual punishment and deliberate indifference" claims against Rivera and Johnson were deemed timely and did not result in significant delay, both claims are "futile" in that they fail to state plausible claims.[2] *Foman*, 371 U.S. at 182.

---

[2] As Judge McCurn noted in *Oneida Indian Nation of New York State v. Cty. of Oneida*, N.Y., 199 F.R.D. 61 (N.D.N.Y. 2000):

> Given that plaintiffs are seeking to add new defendants as well as new claims, their motions to amend implicate not only Rule 15(a), which governs amendment of pleadings generally, but also Rule 20(a), governing permissive joinder, and Rule 21, allowing joinder of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable. However, because in practical terms [there is] little difference between these three rules in that [t]hey all leave the decision whether to permit or deny amendment to the district court's discretion[,] . . . the court will not separately analyze the present motions under each of those three Rules.

199 F.R.D. at 72 (citations, internal quotation marks, and some punctuation omitted).

Here, even if the Court separately analyzes Plaintiff's motion to add new defendants under Rule 20, Fed. R. Civ. P., regarding permissive joinder of defendants, the motion should be denied because Plaintiff fails to meet the two requirements for permissive joinder. Rule 20(a)(2) specifies that "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted

"In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). This standard incorporates both objective and subjective elements. The objective "medical need" element measures the severity of the alleged deprivation, while the subjective "deliberate indifference" element ensures that the defendant prison official acted "with a sufficiently culpable state of mind." *Id.; see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, not every lapse in prison medical care rises to the level of a constitutional violation. *Estelle*, 429 U.S. at 105-06.

Similarly, in order to prevail on a claim that conditions of confinement constitute "cruel and unusual" punishment, a plaintiff must satisfy both an objective and a subjective element. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prove the objective element, a plaintiff must demonstrate that the conditions of his confinement result in "unquestioned and serious deprivations of basic human needs" or deprived him "of the minimal civilized measure of life's necessities." *Anderson v. Coughlin*, 757 F.2d 33, 34-35 (2d Cir.1985) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). With respect to the subjective element, a plaintiff must show that the prison official acted

---

against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." However, in the case at bar, Plaintiff seeks to add defendants "with respect to or arising out of" a *different* transaction or occurrence than the ones for which he seeks relief in his action. The newly alleged events took place at UCONN Medical Center and Cheshire C.I. *after* the incident which gave rise to both the excessive force and torts claims against Phillips and the failure to protect claim against Nunez and *before* the events which gave rise to the unconstitutional conditions of confinement claim against Watson (regarding black mold in Plaintiff's cell). The proposed claims also pertain to *new* or *different* questions of law or fact than those contained in the first Amended Complaint. In any event, the claims should be disallowed because they are "futile" in that they fail to state plausible claims. *See* Part II.C.2. *infra*.

with a "sufficiently culpable state of mind." *Farmer,* 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In cases involving prison conditions, the state of mind is one of "deliberate indifference" to inmate health and safety. *Id.* (quoting *Wilson*, 501 U.S. at 302-03).

In the case at bar, Plaintiff fails to plead sufficient facts to prove subjective "deliberate indifference" in either proposed claim. According to Plaintiff, "[b]efore going to UCONN [Medical Center], Cheshire medical personnel flushed out Plaintiff's eyes after [he was] mased [sic] during [the] incident." Doc. 51, at 4 (¶ 119). Then "[w]hile at UCONN," Corrections Officers Rivera and Johnson were "waiting [with Plaintiff] in [the] examination room," and Plaintiff complained that "he was experiencing severe burning sensations on his face, neck, and middle of his back." *Id.* (¶ 120). In response, the officers "explained that the Plaintiff's sweat was triggering the effects of the mase [sic] and they gave him cold damp paper towels for him to apply to those areas for comfort and relief as the Plaintiff has eczema." *Id.* (¶ 121). Passing "cold[,] damp paper towels" for Plaintiff to apply to his inflamed skin "for comfort and relief" does not, on its face, constitute "deliberate indifference" to a serious medical need. *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006). Although passing wet paper towels may or may not have been fully effective to ease Plaintiff's skin problems, Rivera and Johnson had brought Plaintiff to the UCONN Medical Center for treatment. While at that medical facility, the officers were simply trying to make him more comfortable – as Plaintiff says, to offer him "comfort and relief" – in the examination room. Doc. 51, at 4 (¶ 121). The officers' conduct in passing Plaintiff towels did not demonstrate the requisite subjective recklessness to support an allegation of "deliberate indifference."

"In medical-treatment cases not arising from emergency situations," the official's "[d]eliberate indifference is a mental state equivalent to subjective recklessness, as the term is used

in criminal law." *Salahuddin*, 467 F.3d at 280 (citing *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994)) (internal citations omitted). "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* at 279 (citation omitted). Here, even accepting the allegations as true, and construing them to raise the strongest arguments they suggest, Plaintiff fails to state a plausible "cruel and unusual punishment and/or deliberate indifference" claim against the newly proposed defendants. There are no factual allegations that Rivera and Johnson acted recklessly with respect to Plaintiff's medical needs. Moreover, there is no indication that they acted unreasonably or "deprived [Plaintiff] of adequate medical care." *Id.* at 279-80. Instead, they facilitated his medical care by transporting him to UCONN Medical Center and then tried to make him comfortable while awaiting that care. The Court will disallow this claim as futile.

Finally, as to Plaintiff's newly proposed general claim of "cruel and unusual punishment and deliberate indifference" because Plaintiff was only "allowed to shower some 9 hours after being mased [sic]," that claim is also futile. Doc. 51, at 4 (¶ 123). Plaintiff's claim fails to name a particular defendant or to indicate who, if anyone, made this decision regarding permission to shower, at what time, and under what specific circumstances.

By Plaintiff's own account, after he was maced, his eyes were flushed with water by medical personnel at Cheshire, he was then taken to UCONN Medical Center for treatment, and he "returned to Cheshire around 8:30 p.m. and was allowed to shower around 9 p.m." *Id.* (¶¶ 119-23). Plaintiff's allegation regarding an inability to shower for *9 hours* is thus misleading and/or inaccurate because it fails to take into account that he was admittedly receiving medical assistance at Cheshire and then at UCONN during that interval. He was also allowed to shower within thirty minutes after his return

9

to Cheshire.

Furthermore, because Plaintiff fails to direct this claim against any particular defendant in the action, he fails to allege facts to show that any defendant had a sufficiently culpable state of mind to support a claim for "deliberate indifference" or "cruel and unusual punishment" regarding permission to shower. "To constitute deliberate indifference, [t]he prison official must know of, and disregard, an excessive risk to inmate health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). In other words, one must have knowledge of an inmate's serious medical need and treat that need with "deliberate indifference." With respect to "cruel and unusual punishment," "[t]he subjective component of the claim requires a showing that the defendant had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Sims v. Artuz*, 230 F.3d 14, 21 (2d Cir. 2000) (citation and internal quotation marks omitted).

The facts Plaintiff describes do not prove that any particular prison official was deliberately indifferent or acted with subjective recklessness or wantonness. There is no indication that a certain prison official was aware of an excessive risk to Plaintiff's health if he did not shower at a particular time and personally decided to disregard that risk. Rather, Plaintiff's allegations suggest attempts were made to meet his medical needs and then he was permitted to shower. In sum, there are no allegations that any prison official "act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm w[ould] result" from failure to shower at a given time. *Salahuddin*, 467 F.3d at 280. This claim regarding an inability to shower is futile as pled.

### III. CONCLUSION

The Court construes the pleadings of a *pro se* plaintiff, such as Abrams, liberally, and treats them with the appropriate degree of solicitude. *Triestman*, 470 F.3d at 474; *Matheson*, 706 F. App'x at 26. However, the Court finds that allowing Plaintiff to amend his complaint at this time would not be in the interest of justice under Rule 15(a)(2), Fed. R. Civ. P. His action has been pending for approximately two years and discovery has ended. Therefore, the proposed amendments would significantly delay resolution of this dispute.

Furthermore, Plaintiff has presented no credible reason why he did not seek the proposed amendments when he previously moved to amend in February 2018. All facts giving rise to these alleged claims were within his personal knowledge prior to discovery so he has acted with undue delay. Adding claims and parties at this juncture would unduly prejudice defendants, who would incur new discovery expenses more than two years after the case commenced and discovery closed. Allowing amendment at this late stage of the litigation without a compelling justification would not be in the interest of justice.

Finally, and alternatively, upon review of the particular claims Plaintiff seeks to add – "cruel and unusual punishment and deliberate indifference" – these claims fail to state plausible claims and are thus "futile," *Foman*, 371 U.S. at 182. Plaintiff has failed to allege sufficient facts to demonstrate subjective "deliberate indifference" or recklessness of Rivera, Johnson, or any defendant with respect to these claims.

For the foregoing reasons, Plaintiff's "Motion to Amend Amended Complaint" [Doc. 51] is DENIED in its entirety.

Because discovery has been completed, the parties may wish to consider whether a settlement

conference before a Magistrate Judge might assist them in resolving this matter. If so, they may jointly move for such a conference on or before **January 10, 2020**, and the Court will refer the case for that purpose. Otherwise, if no such motion is filed, and in light of the absence of any pending dispositive motions, the Court will consider the case trial ready and set a schedule to that effect.

It is SO ORDERED.

Signed: December 21, 2019
       New Haven, Connecticut

                                */s/Charles S. Haight, Jr.*
                                CHARLES S. HAIGHT, JR.
                                Senior United States District Judge